UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRIGHT HEAD LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 1:26-cv-404<br><br>JURY TRIAL DEMANDED |

### *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY

Pursuant to Federal Rule of Civil Procedure 65(b)(1)(A), Bright Head LLC ("Plaintiff") respectfully moves this Court for an Order granting a Temporary Restraining Order – including a Temporary Injunction, a Temporary Asset Restraint, and Expedited Discovery – against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A to the Verified Complaint in an action arising out of 35 U.S.C. § 1 *et seq.* and 15 U.S.C. §§ 1051, *et seq.*

i

## **TABLE OF CONTENTS**

I. **INTRODUCTION** ............................................................................................................. 1

II. **STATEMENT OF FACTS** ............................................................................................. 2

   A. Plaintiff's Patent and Genuine Products ........................................................................ 2

   B. Defendants' Unlawful Activities .................................................................................... 2

III. **ARGUMENT** ................................................................................................................... 3

   A. Applicable Standards ..................................................................................................... 3

      1. Standards for Likelihood of Success on the Merits as to Patent Infringement and Unfair Competition Claims ............................................................................................. 4

      2. Standards for Remaining Factors ............................................................................. 5

   B. Plaintiff Will Likely Succeed on the Merits .................................................................. 7

   C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief ................... 8

      1. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Patent Exclusivity .... 9

      2. Plaintiff's Ability to Collect Monetary Damages is, at Best, Uncertain ......................... 9

      3. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing its Market Share ..... 10

   D. The Balancing of Harms Favors Plaintiff .................................................................... 11

   E. A Temporary Restraining Order Will Not Harm the Public Interest ............................ 11

IV. **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE** ................................... 12

   A. A Temporary Restraining Order Immediately Enjoining Defendants from Further Infringement of Plaintiff's Patent is Appropriate ............................................................ 12

   B. Preventing the Fraudulent Transfer of Assets is Appropriate ...................................... 12

   C. Plaintiff is Entitled to Expedited Discovery ................................................................. 13

V. **A BOND SHOULD SECURE THE INJUNCTIVE RELIEF** ...................................... 15

VI. **CONCLUSION** ............................................................................................................... 15

## I. INTRODUCTION

Plaintiff is requesting temporary *ex parte* relief based on an action for patent infringement and unfair competition against the defendants identified on Schedule A to the Verified Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Verified Complaint (Doc. 1), Defendants are foreign entities making, using, importing, selling, and/or offering for sale products that infringe upon Plaintiff's federally registered patents (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Verified Complaint (the "Seller Aliases").

Defendants run a sophisticated foreign infringement operation and have targeted sales to Texas residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Texas residents can purchase Unauthorized Products, likely already shipped to be within US borders. The e-commerce stores operating under the Seller Aliases share identifiers establishing a logical relationship between them. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Further, Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities and the full scope and interworking of their operation and preemptively ship goods into the US to be distributed either through third party marketplaces or other shipping methods. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Patent, as identified in the Verified Complaint (Doc. 1) and in a copy of the issued patent attached thereto as Exhibit 1, prevent further unfair methods of competition of Defendants, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court to issue an *ex parte* Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Plaintiff's Patent and Genuine Products

Plaintiff, Bright Head LLC, is a Delaware limited liability company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901 and is the owner of Plaintiff's Patent with full and sole control over any enforcement and exploitation in the Plaintiff's Patent. *See* Verified Complaint (Doc. 1) at ¶ 5-6 and Exhibit 1 thereto. Since purchasing Plaintiff's Patent, Plaintiff has developed a product line that embodies Plaintiff's Patent (collectively, "Plaintiff's Product") and is selling direct-to-consumer through its website, through various retailers, and through its stores on third-party marketplaces. *Id.* at ¶ 12. Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282. *Id.* at ¶ 8.

### B. Defendants' Unlawful Activities

The success of the invention claimed in Plaintiff's Patent has resulted in significant infringement of Plaintiff's Patent. *Id.* at ¶ 13. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), including the e-commerce stores operating under the Seller Aliases. *Id.* The Seller Aliases target consumers in this Judicial District and throughout the United States. *Id.* at ¶¶ 23-24. Defendants are believed to be foreign entities importing infringing goods into the United States for sale on third-party marketplaces. *See id.* at ¶ 39 and Exhibit 2 thereto.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among Defendants' e-commerce stores, similarities between the Unauthorized Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are interrelated.

## III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and, unless enjoined, will continue to cause irreparable harm to Plaintiff, along with its loss of future sales, market share, reputation, and goodwill. To stop this irreparable harm, Plaintiff respectfully requests that this Court issue a temporary restraining order and, following any necessary hearing, a preliminary injunction ordering, among other things, the immediate cessation of sales of the infringing products, a recall of all infringing products currently on store shelves, and a cessation of advertisements for the infringing products. Without the relief requested by this Motion, Defendants' unlawful activity will continue unabated and Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

### A. Applicable Standards

Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283.[1] The right to exclude others is among the most valuable rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude") (internal citations omitted). The purpose of a preliminary injunction is to preserve the status quo by preventing future infringement pending a determination on the merits. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).

Motions for temporary restraining orders are evaluated under the same standard as a preliminary injunction. *Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987). The substantive law of the Federal Circuit governs the issuance of a preliminary injunction in patent cases. *Hybritech Inc.*

---

[1] With respect to the applicable standard, the Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

*v. Abbott Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988). Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 815-16 (N.D. Ill. 2007) (citing *Polymer Techs., v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. (1996)).

      1.    <u>Standards for Likelihood of Success on the Merits as to Patent Infringement and Unfair Competition Claims</u>

Regarding the first factor, success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire*, 566 F.3d at 1376. However, issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id.* at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377 (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., v. Nu-Kote Int'lm Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)).

Infringement of a utility patent "involves a two-step process: (1) 'the court determines the scope and meaning of the asserted claims'; and (2) 'the properly construed claims are compared to the allegedly infringing device.'" *Edge Sys. LLC v. Aguila*, 635 Fed. Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). Plaintiff need only show a likelihood of infringement of one or more claims of the asserted patent to show a likelihood of success. *Id.*

While "[u]nfair competition originally was an extension of trademark law," the Supreme Court case *International News Service v. Associated Press*, "expanded the parameters of unfair

4

competition beyond 'palming off' by refusing to 'concede that the right of equitable relief is confined to [trademark] class of cases,' although those cases were still the most common." *Wilson v. Electro Marine Sys.*, 915 F.2d 1110, 1118 (7th Cir. Oct. 4, 1990) (*quoting* 248 U.S. 215, 241-242 (1918)). Some courts have interpreted this to mean that the "'essence of an unfair competition claim. . . is that the defendant has misappropriated the labors and expenditures of another. . . . Central to this notion is some element of bad faith.'" *Id.* (*quoting Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)). The Seventh Circuit also stated that this body of non-trademark unfair competition law "has evolved around the theory that at times business competitors engage in activity which, while perhaps not actionable under other commercial tort theories, so 'shocks judicial sensibilities' or violates 'standards of commercial morality'" that it cannot be tolerated. *Id.* (*citing Margarete Steiff, Inc. v. Bing*, 215 F. 204 (D.N.Y. 1914); *People ex rel. Mosk v. National Research Co.*, 201 Cal. App. 2d 765 (1962)).

Additionally, other areas of U.S. law define "unfair methods of competition" to include patent infringement. Section 337 of the Tariff Act of 1930 defines unfair methods of competition to include "infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B). Here, as outlined below, Defendants have engaged in unfair competition not only by infringing upon Plaintiff's patent rights but doing so in a manner that is designed to evade prosecution of that claim and to shield potentially collectable assets from the Court's jurisdiction.

2.  Standards for Remaining Factors

The second factor, irreparable harm, can be shown in various ways. For example, "Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) (citing *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013)). "[T]he Federal Circuit has repeatedly held that '[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Tinnus Enters., LLC v. Telebrands Corp.*, 2016 U.S. Dist. LEXIS 181095, at *37 (E.D. Tex. July 12, 2016) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543

F.3d 683, 703 (Fed. Cir. 2008); *see also Douglas Dynamics v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Circ. 2013) ("[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). Moreover, courts have recognized that irreparable harm exists where, as here, the accused infringer is not likely to pay a damages award. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (citing *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. Jan. 25, 208)); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 16-cv-33, 2016 WL 7587339, at *3 (E.D. Tex. July 12, 2016) (citations omitted), *report and recommendation adopted*, 2016 WL 9045962 (Sept. 29, 2016), *aff'd*, 708 F. Appx 1019 (Fed. Cir. 2018). While the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay, v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus "[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011).

In patent cases, for the third factor (the balance of hardships), "the magnitude of the threatened injury to the patent owner is weighed, in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *Tinnus Enters., LLC*, 2016 U.S. Dist. LEXIS 181095, at *11 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).

For the fourth factor (public interest), the public interest favors the maintenance of a well-functioning patent system. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 203 (2014). The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). "[E]ncouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985). The Federal Circuit has further recognized that "[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success o[n] the merits, ... absent any other relevant concerns ... the public is best served by enforcing

6

patents that are likely valid and infringed." *Abbot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

### B. Plaintiff Will Likely Succeed on the Merits

Plaintiff alleges infringement of Plaintiff's Patent and unfair methods of competition under the Lanham Act. Defendants are infringing at least Claim 1 of Plaintiff's Patent. *See* Verified Complaint (Doc. 1) at ¶ 27 and Exhibits 2 and 3 thereto. The claim charts attached to Plaintiff's Verified Complaint (Doc. 1) as Exhibit 3 show the Unauthorized Products meeting all of the claim elements of Claims 1 of Plaintiff's Patent, and the screenshot evidence attached to the Verified Complaint (Doc. 1) as Exhibit 2 provides evidence sufficient to show that the Defendants' Unauthorized Products which infringe Plaintiff's Patent were offered for sale, including to those who reside in this Judicial District.

Accordingly, Plaintiff has demonstrated infringement of the requisite at least one claim of Plaintiff's Patent. Consequently, Plaintiff has shown a high likelihood of success on its claim for infringement of Plaintiff's Patent. With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). The Court need not resolve validity at this early stage. *Id*. At this point, because Defendants have not come forth with any challenge to the validity of Plaintiff's Patent, the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[I]f a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue").

Regarding unfair competition, Plaintiff has demonstrated a likelihood of success on the merits as well. Plaintiff has shown that each Defendant is a foreign entity, with screenshots (where available), demonstrating that Defendants are located outside of the United States, many in China.

Defendants' use of Seller Aliases, sales through third-party marketplaces that permit obfuscation of identity, and shipments of Unauthorized Products into the U.S. are collectively unfair methods of competition under the Lanham Act, as they "misappropriated the labors and expenditures" of Plaintiff by trying to profit off of Plaintiff's patented invention while evading traditional enforcement mechanisms designed for such behavior. This is particularly true because Defendants' infringing schemes are orchestrated in a manner to evade U.S. Patent laws and thereby shield their assets from the jurisdiction of U.S. Courts and enforcement agencies.

For example, had Defendants not hid their identifies through the use of Seller Aliases and/or already shipped their goods to the United States for distribution through third-party marketplaces or other shipping methods, Plaintiff may have had an opportunity to bring an action to the International Trade Commission ("ITC") under Section 337 for unfair competition, as Defendants' importation of Unauthorized Products is considered an unfair method of competition. *See* 19 U.S.C.A. § 1337(a)(1)(B). However, Defendants' use of a seller alias, sale through third-party marketplaces, and importation of infringing goods into the U.S., likely to distribution centers or shipping warehouses,[2] evades traditional enforcement mechanisms designed for this kind of unfair competition. Additionally, such behavior by Defendants, "violates 'standards of commercial morality' that it cannot be tolerated." Defendants, all of whom are foreign entities, hide their identities through the use of seller aliases on third-party marketplaces, ship goods prior to U.S. warehouses and third-party marketplaces distribution centers, and sell products which infringe Plaintiff's Patent on third-party marketplaces to U.S. customers. Such unlawful obfuscation of fair competition must be prevented.

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The second element of the injunction analysis, whether Plaintiff will suffer irreparable harm absent the requested relief, "seeks to measure harms that no damages payment, however

---

[2] Defendants' Unauthorized Products are likely in the U.S. and are ready to be shipped to U.S. addresses. *See* Verified Complaint (Doc. 1) at Exhibit 2, showing that Amazon Defendants offer Prime delivery, often within two days. Such a short window suggests that Unauthorized Products are already in the US in Amazon warehouses and distribution centers.

8

great, could address." *Celsis in Vitro, Inc., v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Here, Plaintiff will be immediately and irreparably harmed if Defendants are not enjoined from making, using, selling, and offering for sale the Unauthorized Products. As demonstrated in Plaintiff's Verified Complaint and accompanying evidence, due to Defendants' actions, Plaintiff is suffering difficulty to enter into what should be an otherwise exclusive market, damage to its reputation, and loss of current and future sales. "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Id.*; *see Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

1. <u>Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Patent Exclusivity</u>

The ability to exclude others is fundamental to the patent right. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude"); *Smith Int'l, v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The very nature of the patent right is the right to exclude others"). That right is rendered meaningless where others are permitted to continue their infringement. This is particularly true because Plaintiff has its patent right only for a limited time. Thus, the inability to exclude others for any period of time during the term of the patent – including during the period of time necessary to reach a final judgment in this case – constitutes harm for which Plaintiff cannot be adequately compensated at law. Therefore, an injunction is necessary in order to preserve Plaintiff's right to exclude others from practicing its invention.

2. <u>Plaintiff's Ability to Collect Monetary Damages is, at Best, Uncertain</u>

The Defendants in this case are each believed to be located in the People's Republic of China. They seem to primarily sell Unauthorized Products through online marketplace platforms like Amazon. This permits them a certain level of anonymity and evasiveness. Being entities without readily apparent domestic assets and operating through an online marketplace that shields their operations, it is reasonable to infer that collecting monetary damages against Defendants will be difficult, and potentially impossible. Such factors have been held to be significant in

determining that a patent owner will suffer irreparable harm. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021) (citing *Robert Bosch LLC*, 659 F.3d at 1155-56).

3. <u>Plaintiff Will Suffer Immediate and Irreparable Harm by Losing its Market Share</u>

Additionally, absent an injunction, Plaintiff will suffer the loss of what should be an exclusive market share. Loss of market share constitutes irreparable injury for which Plaintiff has no adequate remedy at law. *See Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm"). Plaintiff is being prevented from breaking into what should be an exclusive market due to Defendants' infringing activity and unfair commercial tactics which evade traditional enforcement mechanisms while selling infringing products, imported from other countries, throughout the United States. If this market share is lost due to Defendants' unlawful acts, it might never be recovered. Such loss cannot be remedied by mere monetary damages (or even a permanent injunction issued at the end of this case) and thus constitutes irreparable harm. *See Canon, v. GCC Intern. Ltd.*, 2006-1615, 2008 U.S. App. LEXIS 2429, *11 (Fed. Cir. 2008) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient").

Here, it is clear that Plaintiff will continue to lose what should be an exclusive market share if Defendants are not enjoined from continuing their infringing activities. Plaintiff and Defendants are direct competitors and Defendants' Unauthorized Products are unlawfully sold through the similar channels of trade as where Plaintiff's Products will be sold. Additionally, the vast majority of customers will purchase all of products that embody Plaintiff's Patent (if they have more than one) from a single source, likely in a single transaction. Thus, each sale of an Unauthorized Product made by Defendants is a sale that Plaintiff cannot make.

To the extent a customer needs to make additional purchases, the loss of that initial sale results in the loss of the potential to make the ongoing sales for replacements due to damage or

loss of the initial products that embody Plaintiff's Patent. Moreover, because the online marketplace sales are, in part, fueled by customer review, influencer referrals, and word of mouth, it is reasonable to infer that the sale and use of Plaintiff's Product increases the exposure of Plaintiff's Product to new customers. This leads to a continuous cycle of harm in the form of loss of potential customers, which in turn reduces Plaintiff's hard-earned market share. *See generally Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (considering loss of access to potential customers as evidence of irreparable harm). Consequently, Plaintiff's market share is actively being harmed by Defendants' continued unlawful conduct.

### D. The Balancing of Harms Favors Plaintiff

The third factor, the balance of hardships, favors Plaintiff as well. "The magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987) (overturned on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995)).

As set forth above, Plaintiff has made a strong showing of a likelihood of success on the merits of its patent infringement claim; thus, the balance of hardships need only weigh slightly in its favor. Additionally, any potential harm to Defendants is merely a consequence of Defendant's own infringing activities and therefore should not be considered when weighing the harms. In contrast, Plaintiff will suffer immediate and irreparable harm for which there is no adequate remedy at law if this injunction is not granted, as set forth above. Accordingly, the balance of harms weighs strongly in favor of Plaintiff.

### E. A Temporary Restraining Order Will Not Harm the Public Interest

The starting point for analysis of the public interest is favoring protection of a patentee because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief."

11

*Hybritech, v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of the requested relief. The public has an interest in the functioning of its patent system and in encouraging fair business practices. *See PPG*, 75 F.3d at 1567. Accordingly, no public interest will be harmed by an injunction.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" under 15 U.S.C. § 1125(a)."15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants from Further Infringement of Plaintiff's Patent is Appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all making, using, importing, selling, and/or offering to sell Unauthorized Products on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Plaintiff, including loss of market share and erosion of Plaintiff's patent rights, and to prevent the Defendants from continuing to benefit from infringing upon Plaintiff's Patent. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Unauthorized Products. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Nike, Inc. v. Fujian Bestwinn Industry Co.*, 166 F.Supp. 3d 1177, 1178-79 (D. Nev. 2016).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so Plaintiff's right to an equitable accounting of Defendants' profits from Unauthorized Product sales is not impaired.

Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Additionally, Plaintiff has shown a strong likelihood of succeeding on the merits of its unfair competition claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff's Verified Complaint (Doc. 1) seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that barring Defendants' assets being frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, an asset restraint is proper.

### C. Plaintiff is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

Fifth Circuit Courts have employed a "good cause" or "reasonableness" test to determine whether expedited discovery is permissible, which entails analysis of factors including "the

13

breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made." *J.P. Morgan Sec. LLC v. Stephen C. Smith*, 2022 U.S. Dist. LEXIS 75732 (M.D. La. 2022). Granting pre-conference discovery falls within the Court's "wide discretion to control the course of litigation, which includes the authority to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

Plaintiff respectfully requests expedited discovery to discover Defendants' email addresses or other contact information and the bank and payment system accounts Defendants use for their infringing operations. The expedited discovery requested in Plaintiff's proposed TRO is limited in breadth to include only what is essential to serve Defendants in accordance with Rule 4(f) and prevent further irreparable harm. Plaintiff only requests information that imposes little to no burden to gather and produce. Further, the time of Plaintiff's request is not unreasonable relative to when such discovery would occur in the normal course of litigation – and is in fact crucial for timely moving this case forward. The Court's injunction and asset restraint may have little meaningful effect without the requested relief.

Accordingly, Plaintiff respectfully requests that expedited discovery be granted related to:

a. the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in concert or participation with them, including all known contact information and all associated e-mail addresses;

b. the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Defendant Internet Stores, and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Defendant Internet Stores; and

c. any financial accounts owned or controlled by Defendants, including their officers, agents, servants, employees, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings

and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Inc. ("PayPal"), eBay, Alipay, Alibaba, AliExpress, Ant Financial Services Group ("Ant Financial"), Amazon Pay, Temu, Walmart, Target, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard, VISA, Discover, and American Express).

## V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65(c) provides that the Court may enter a temporary restraining order only where the movant puts up security adequate to compensate the party to be restrained should their restraint later be found to be wrongful. *See* Fed. R. Civ. P. 65(c). The amount of that security "is a matter for the discretion of the trial court." *Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978)). Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand dollars ($10,000) in total.

## VI.   CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without an injunction, Plaintiff respectfully requests that its temporary restraining order be immediately granted.

DATED: January 26, 2026                              Respectfully submitted,

/s/ _Joseph P. Hooper_
Joseph P. Hooper, WDTX #77011
Allen Justin Poplin, WDTX #21598
AVEK IP, LLC
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
Phone: 913-303-3841
jhooper@avekip.com
jpoplin@avekip.com

/s/ Sameeul Haque
Sameeul Haque (pro hac forthcoming)
samee@h3lp.law
Haque III Legal Practice, LLC
205 N. Michigan Ave., Ste. 810
Chicago, IL 60601
T: 847.401.6113

*Counsel for Plaintiff, Bright Head LLC*